508 P.2d 345

The CITY OF TUCSON, a municipal corporation, Appellant,

v.

Kathleen King Flynn FARNESS, Executrix of the Estate of O. J. Farness, Deceased, and Kathleen King Flynn Farness, Appellee.

No. 2 CA–CIV 1081.

Court of Appeals of Arizona, Division 2.

April 5, 1973.

Rehearing Denied April 25, 1973.

Review Denied May 29, 1973.

Herbert E. Williams, City Atty. by J. Dan O'Neill, Tucson, for appellant.

Stubbs & Stephens, P. C. by Robert C. Stubbs and James C. Stephens, Tucson, for appellee.

HOWARD, Judge.

Pursuant to Resolutions Nos. 7399 and 7950, appellant undertook certain improvements under the provisions of Title 9, Chapter 6, Articles 2, 3 Arizona Revised Statutes. The proposed improvements called for, *inter alia,* the widening of Grant Road in Tucson, Arizona. To accomplish this purpose, appellant filed this eminent domain action to secure an additional twenty feet of unimproved land along the front of appellee's property.

The appellee made a motion to dismiss this appeal contending that appellant had

failed to perfect its appeal within the period provided in A.R.S. § 9-614.[1] Appellee's authority for the motion was City of Tucson v. Rickles, 109 Ariz. 82, 505 P.2d 253 (1973).

Examining the decision in *Rickles*, we find that the court presumed that the condemnation action was filed pursuant to Title 9, Chapter 6, Article 1, Arizona Revised Statutes, A.R.S. §§ 9-601 through 9-657, entitled "Opening, Widening and Closing Public Ways". The appellant in this case, however, did not proceed under Article 1 of the aforementioned Title and Chapter, but instead proceeded under Article 2 thereof, A.R.S. §§ 9-671 through 9-710, entitled "General Public Improvements and Improvement Bonds".

A.R.S. § 9-672, as amended, states that when the public interest or convenience requires, the municipality may "Order the whole or any portion, either in length or width, of one or more of the streets of the municipality graded or regraded, paved or repaved, or otherwise improved or reimproved." Subsection B of A.R.S. § 9-672 provides for additional powers to the municipality which are in addition to ". . . all powers specifically granted by or reasonably inferred under the provisions of this article, . . ."

We find the answer to appellee's contention in A.R.S. § 9-635 which states:

"A. The proceedings authorized by this article are intended to provide an alternate system of proceedings for making the improvements provided for.

B. It is within the discretion of a municipality to proceed in making the improvements, either under the provisions of this article, or under the provisions of other laws, but when proceedings are commenced under this article the provisions thereof, and none other, apply to all the proceedings.

C. The election of the council to proceed under this article shall be expressed in its resolution of intention to order the work done."

A.R.S. § 9-671 et seq., provides an alternate system for the widening of the streets in the municipality. The City in the case *sub judice* did not proceed under § 9-601 et seq., but instead under § 9-671 et seq. This condemnation action was governed by the general statutes on Eminent Domain, Title 12, Chapter 8, Article 2, 4 Arizona Revised Statutes, and the sixty-day appeal period provided in Rule 73(b), as amended, Ariz.R.Civ.P., 16 A.R.S., applies.

The City of Tucson contends that the trial court erred by admitting into evidence the amount of the assessments which would be assessed as the result of the same street widening which is the subject of this action. We find, however, that the appellant offered no objection to the admissibility of this evidence and therefore cannot complain of the admission of the same for the first time on appeal. City of Tucson v. Wondergem, 105 Ariz. 429, 466 P.2d 383 (1970).

Appellant next contends that the trial court erred in admitting testimony regarding the cost of restoring a hedge on the property, claiming there was no testimony that the $1,500 expended to restore the hedge would be less than the decrease in market value due to the loss of a hedge.

In Pima County v. De Concini, 79 Ariz. 154, 285 P.2d 609 (1955), the court stated:

"The rule also is that in arriving at the market value of land which has been damaged by the exercise of the right of eminent domain the court has a right to admit evidence of possible expenditures which, if expended, would diminish the damages. While the measure of severance damages is the difference between the market value before and after the taking, evidence of expenditures which, if made, would cause a change in market value are admissible and should be con-

---

1. This section provides that an appeal may be taken from the judgment within thirty days from the entry thereof, and from any order granting or denying a new trial within ten days after the entry of the order.

**460**

sidered by the court in arriving at such value. The limitation of the rule is that the expenditures must be in such an amount as will not exceed the difference between the market value before and after taking which would have existed without the expenditure. In other words, this class of evidence cannot operate to increase the damages above what they would be without the expenditure."

In examining the testimony of appellee's appraiser we find that the rule in *De Concini* was met since the appraiser testified that without the expenditure of the $1,500 to restore the hedge on the property, a house remaining on the property which had an interim use as a residence and was worth $9,000, would have been rendered worthless.

Lastly, the appellant complains that in valuing the land taken appellee's appraiser included therein the sum of ten cents a square foot which represented a "contributing value" to the unimproved property as a result of the improvement on the property, to wit, the house. Since no part of the house was taken appellant contends that this appraisal method was erroneous by including in the part taken an amount which represents improvements which still exist in the property. Appellant's objection is well taken. The method used by the appraiser in this case was similar to the one he used and which was disapproved by the court in City of Tucson v. Rickles, supra. Appellee in her brief and at oral argument has agreed that the court may reduce the verdict by the sum of $644.68 which represents this extra ten cents per square foot if it finds that the appraisal method was incorrect.

The judgment of the trial court is affirmed in all respects except that the amount of the same is reduced by the sum of $644.68 to the sum of $20,987.32.

HATHAWAY, C. J., and J. RICHARD HANNAH, Judge of the Superior Court, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge J. RICHARD HANNAH was called to sit in his stead and participate in the determination of this decision.